UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X   Case No.: 1:22-cv-01567-PGG-SN

ESPERANZA BENCOSNE,

                              Plaintiff,                    **PROPOSED FINDINGS OF FACT
                                                            AND CONCLUSIONS OF LAW**

        -against-


BEAUTIFUL  PARADISE  RESTAURANT  CORP.,
MARIBELLA  PARADISE  RESTAURANT  CORP.,
JUAN A. GUERRA MARTINEZ, *Individually,* and
VICTOR PUEGUERO SOLANO, *Individually*,

                              Defendants.

---------------------------------------------------------------X

**PLAINTIFF ESPERANZA BENCOSNE'S
PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff, Esperanza Bencosne ("Plaintiff"), by and through her attorneys, Phillips &

Associates, Attorneys at Law, PLLC, hereby submits the following Proposed Findings of Fact and

Conclusions of Law in support of, and in furtherance of, the Default Judgment entered in the within

action against Defendants Beautiful Paradise Restaurant Corp. ("Beautiful Paradise"), Maribella

Paradise Restaurant Corp. ("Maribella Paradise"), Juan A. Guerra Martinez ("Martinez"), and

Victor Peguero Solano ("Solano") (collectively "Defendants"). Notably, with the consent of

Plaintiff, all claims against Defendant Martinez are dismissed without prejudice and accordingly,

Defendant Martinez has been terminated from the within action.

## I.   FINDINGS OF FACT RELEVANT TO THIS ACTION

1.      Per the factual allegations in the Plaintiff's Complaint, this action was commenced

pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the New York State

Labor Law, Articles 6 & 19 ("NYLL"), and the N.Y. Codes Rules and Regulations Title 12 §§142-2.2 and 142-2.4 ("NYCRR") for failure to pay Plaintiff minimum wage and overtime wages due and owed for hours worked in excess of forty (40) hours per workweek and spread-of-hours compensation for hours worked in excess of 10 hours per day. *See* **Exhibit A**, annexed to the Declaration of Joshua Friedman (hereinafter, "Friedman Decl.") ¶ 20, Plaintiff's Complaint ("Complaint").

2.      On or about December 20, 2017, Plaintiff began working for Defendant Beautiful Paradise Restaurant Corp. as a cook. *See* **Exhibit B**, Friedman Decl. ¶ 4, Plaintiff's Affidavit ¶ 2 (hereinafter, "Plaintiff's Aff.").

3.      At all times material, Defendants paid Plaintiff $10.50 per hour or less. Defendants never paid Plaintiff overtime, and never paid for spread-of-hours. In fact, on a few occasions, Defendants refused to pay Plaintiff at all. Plaintiff's Aff. ¶ 3.

4.      Defendants never provided Plaintiff with a wage notice or wage statement. Plaintiff's Aff. ¶ 4.

5.      Plaintiff worked for Defendant as a cook, and therefore did not receive tips. Further, Plaintiff was not permitted extended breaks or mealtimes. Plaintiff's Aff. ¶ 5.

6.      From December 20, 2017, through December 31, 2017 (the 2017 period) Plaintiff worked a total of 60 hours. However, Plaintiff was only paid $370.00 per week. Plaintiff's Aff. ¶ 6.

7.      From January 1, 2018, through September 13, 2018 (the "2018 Period") Plaintiff worked approximately twenty-four (24) weeks. Defendants never paid Plaintiff overtime, and insisted she continue to work long hours. Plaintiff's Aff. ¶ 7.

8.      From January 1, 2018, to September 13, 2018, Plaintiff had to work for both

Defendants BEAUTIFUL PARADISE and MARBELLA PARADISE. From January 1, 2018, to March 10, 2018, (10 weeks), Plaintiff worked for Defendants six (6) days a week from 3:00 AM to 1:00 PM. Therefore, Plaintiff worked sixty (60) hours per week. However, Plaintiff was never paid for her overtime. From January 1, 2018, to March 10, 2018, at the end of each work week, Defendants paid Plaintiff Three Hundred Sixty Dollars ($360.00) regardless of how many hours she worked.  Plaintiff's Aff. ¶ 8.

9.      From March 11, 2018, to March 30, 2018, the restaurant was closed for due to Covid-19 and reopened on March 31, 2018. Plaintiff's Aff. ¶ 9.

10.      From March 31, 2018, to May 25, 2018 (8 weeks), Plaintiff worked for Defendants six (6) days a week from 3:00 AM to 2:00 PM. Therefore, Plaintiff worked approximately sixty-six (66) hours per week and eleven (11) hours per day. Defendants continued to deny Plaintiff her full pay. From March 31, 2018, to May 25, 2018, at the end of each work week, Defendants paid Plaintiff Five Hundred Eighty-Eight Dollars ($588.00). Plaintiff's Aff. ¶ 10.

11.      From May 26, 2018, to June 29, 2018 (5 weeks), Plaintiff worked for Defendants seven (7) days a week from 3:00 AM to 2:00 PM. Specifically, Plaintiff worked six (6) days at BEAUTIFUL PARADISE and one (1) day at MARIBELLA PARADISE. Therefore, Plaintiff worked seventy-seven (77) hours per week and eleven (11) hours per day. From May 26, 2018, to June 29, 2018, at the end of each work week, Defendants paid Plaintiff only Four Hundred Thirty Dollars ($430.00). Plaintiff's Aff. ¶ 11.

12.      From July 7, 2018, to July 13, 2018 (1 week), Plaintiff worked for Defendants seven (7) days from 3:00 AM to 2:00 PM. That week, Plaintiff worked seventy-seven (77) hours total and eleven (11) hours per day. From July 7, 2018, to July 13, 2018, at the end of the work week, Defendants paid Plaintiff Four Hundred Thirty Dollars ($430.00). Plaintiff's Aff. ¶ 12.

13.     From July 14, 2018, to July 20, 2018, Plaintiff worked for Defendants (6) days. Plaintiff worked five days at BEAUTIFUL PARADISE and one day at MARIBELLA PARADISE. Therefore, Plaintiff worked seventy-four (74) hours. From July 14, 2018, to July 20, 2018, at the end of the work week, Defendants paid Plaintiff Three Hundred Seventy Dollars ($370.00). Plaintiff's Aff. ¶ 13.

14.     From July 21, 2018, to July 28, 2018 (1 week), Plaintiff worked for Defendants seven (7) days from 3:00 AM to 2:00 PM. Therefore, Plaintiff worked seventy-seven (77) hours total and eleven (11) hours per day. However, from July 21, 2018, to July 28, 2018, at the end of the work week, Defendants paid me Four Hundred Thirty Dollars ($430.00). Plaintiff's Aff. ¶ 14.

15.     From July 28, 2018, to August 3, 2018 (1 week), Plaintiff worked for Defendants six (6) days. Specifically, Plaintiff worked Saturday to Tuesday and Thursday to Friday from 3:00 AM to 2:00 PM. On Wednesday, Plaintiff worked from 3:00 AM to 6:00 PM. Therefore, Plaintiff worked sixty-nine (69) hours total and more than ten (10) hours per day. However, from July 28, 2018, to August 3, 2018, at the end of the work week, Defendants paid Plaintiff Four Hundred Thirty Dollars ($430.00). Plaintiff's Aff. ¶ 15.

16.     From August 4, 2018, to September 6, 2018 (5 weeks), Plaintiff worked for Defendants seven (7) days a week from 3:00 AM to 2:00 PM. Accordingly, Plaintiff worked seventy-seven (77) hours per week and eleven (11) hours per day. However, from August 4, 2018, to September 6, 2018, at the end of each work week, Defendants paid Plaintiff Four Hundred Thirty Dollars ($430.00). Plaintiff's Aff. ¶ 16.

17.     From September 8, 2018, to September 13, 2018, Plaintiff worked for Defendants six (6) days from 3:00 AM to 2:00 PM. Therefore, Plaintiff worked sixty-six (66) hours and eleven (11) hours per day. From September 8, 2018, to September 13, 2018, at the end of that week,

4

Defendants paid Plaintiff Three Hundred Seventy Dollars ($370.00). Plaintiff's Aff. ¶ 17.

18.    On or about September 13, 2018, Plaintiff stopped working for Defendants. Plaintiff's Aff. ¶ 18.

19.    On or about September 20, 2019, through December 31, 2019 ("the 2019 period"), Plaintiff returned to work for Defendants. Plaintiff's Aff. ¶ 19.

20.    From on or about September 20, 2019, to September 24, 2019, Plaintiff worked for Defendants five (5) days. Therefore, Plaintiff worked forty-two (42) hours total. During the 2019 period, Plaintiff worked for Defendants approximately 15 weeks. However, Defendants continued to deny Plaintiff her full and fair paycheck. From September 20, 2019, to September 24, 2019, at the end of the work week, Defendants paid Plaintiff Two Hundred Eighty Dollars ($280.00). Plaintiff's Aff. ¶ 20.

21.    From September 25, 2019, to December 24, 2019 (13 weeks), Plaintiff worked for Defendants seven (7) days a week from 3:00 AM to 2:00 PM. Therefore, Plaintiff worked seventy-seven (77) hours per week and 11 hours per day. From September 25, 2019, to December 24, 2019, at the end of each work week, Defendants paid Plaintiff Three Hundred Eighty Dollars ($380.00). Plaintiff's Aff. ¶ 21.

22.    From on or about December 26, 2019, to December 31, 2019, Plaintiff worked for Defendants six (6) days. Therefore, Plaintiff worked sixty-six (66) hours and 11 hours per day. However, Defendants only paid Plaintiff Three Hundred Eighty Dollars ($380.00) at the end of each week. Plaintiff's Aff. ¶ 22.

23.    From on or about January 2, 2020, to December 27, 2020 ("the 2020 period"), Plaintiff worked thirty-five (35) weeks for Defendants. Plaintiff's Aff. ¶ 23.

24.    From January 2, 2020, to January 7, 2020, Plaintiff worked for Defendants six (6)

days from 3:00 AM to 2:00 PM. Therefore, Plaintiff worked sixty-six (66) hours and 11 hours per day. From January 2, 2020, to January 7, 2020, at the end of the work week, Defendants paid Plaintiff Three Hundred Eighty Dollars ($380.00). Plaintiff's Aff. ¶ 24.

25.	From January 8, 2020, to March 10, 2020 (9 weeks), Plaintiff worked for Defendants seven (7) days a week from 3:00 AM to 2:00 PM. Accordingly, Plaintiff worked seventy-seven (77) hours per week and 11 hours per day. From January 8, 2020, to March 10, 2020, at the end of each work week, Defendants paid Plaintiff only Three Hundred Eighty Dollars ($380.00). Plaintiff's Aff. ¶ 25.

26.	From March 11, 2020, to March 15, 2020 (1 week), Plaintiff worked for Defendants five (5) days from 3:00 AM to 2:00 PM. Accordingly, Plaintiff worked fifty-five (55) hours and 11 hours per day. From March 11, 2020, to March 15, 2020, at the end of the work week, Defendants paid Plaintiff Two Hundred Eighty Dollars ($280.00). Plaintiff's Aff. ¶ 26.

27.	From July 15, 2020, to July 28, 2020 (2 weeks), Plaintiff worked for Defendants seven (7) days a week from 10:00 AM to 10:00 PM. Therefore, Plaintiff worked eighty-four (84) hours per week and twelve (12) hours per day. From July 15, 2020, to July 28, 2020, at the end of each work week, Defendants failed to pay Plaintiff. Plaintiff's Aff. ¶ 27.

28.	From July 29, 2020, to August 18, 2020 (3 weeks), Plaintiff worked for Defendants seven (7) days a week from 3:00 PM to 6:00 AM. Accordingly, Plaintiff worked one hundred five hours (105) hours per week and 15 hours per day. At the end of each week, Defendants paid Plaintiff One Hundred Eighty Dollars ($180.00). Plaintiff's Aff. ¶ 28.

29.	From on or about August 19, 2020, to September 1, 2020 (2 weeks), Plaintiff worked for Defendants seven (7) days a week from 3:00 PM to 6:00 AM. Therefore, Plaintiff worked one hundred five hours (105) hours per week and 15 hours per day. From August 19, 2020,

6

to September 1, 2020, at the end of each work week, Defendants paid Plaintiff Two Hundred Eighty Dollars ($280.00). Plaintiff's Aff. ¶ 29.

30.     From on or about September 2, 2020, to November 3, 2020 (9 weeks), Plaintiff worked for Defendants seven (7) days a week from 8:00 PM to 1:00 PM and seventeen (17) hours per day. Therefore, Plaintiff worked one hundred nineteen (119) hours per week. However, although Defendants required Plaintiff to work one hundred nineteen (119) hours each week, Defendants failed to adequately pay Plaintiff. From September 2, 2020, to November 3, 2020, Defendants paid Plaintiff Three Hundred Eighty Dollars ($380.00). Plaintiff's Aff. ¶ 30.

31.     From on or about November 4, 2020, to December 15, 2020 (6 weeks), Plaintiff worked for Defendants seven (7) days a week. Specifically, Plaintiff worked Wednesday, Friday, Saturday, and Sunday from 1:00 AM to 1:00 PM and Monday, Tuesday, and Thursday from 8:00 PM to 1:00 PM. Therefore, Plaintiff worked ninety-nine (99) hours per week and more than ten (10) hours per day. From November 4, 2020, to December 15, 2020, at the end of each work week, Defendants paid Plaintiff Three Hundred Eighty Dollars ($380.00). Plaintiff's Aff. ¶ 31.

32.     From on or about December 23, 2020, to December 27, 2020 (1 week), Plaintiff worked for Defendants four (4) days that week. Specifically, Plaintiff worked Wednesday, Saturday, and Sunday from 1:00 AM to 1:00 PM and Thursday from 8:00 PM to 1:00 PM. Therefore, Plaintiff worked fifty-three (53) hours that week and more than ten (10) hours per day. From December 23, 2020, to December 27, 2020, Defendants paid Plaintiff Three Hundred Thirty Dollars ($330.00). Plaintiff's Aff. ¶ 32.

33.     On or about December 28, 2020, Plaintiff took a leave of absence due to a work-related injury and has not returned since that time. Plaintiff's Aff. ¶ 33.

## II.    PROPOSED CONCLUSIONS OF LAW

34.    As an initial matter, "following entry of default, the plaintiff may then obtain a judgment by default pursuant to Rule 55(b) . . . [and] the Court can hold a hearing to determine the amount of damages, if necessary, and then enter judgment." *RLS Assocs., LLC v. United Bank of Kuwait PLC*, No. 01-cv-1290, 2002 U.S. Dist. LEXIS 1371, at \*6-7 (S.D.N.Y. Jan. 29, 2002), (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)).

35.    "The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, 'as long as the Court has ensured that there was a basis for the damages specified in the default judgment'." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

36.    "Under the case law interpreting Rule 55, the default establishes [Defendants'] liability as long as the complaint has stated a valid cause of action." *Coach, Inc. v. O'Brien*, No. 10-cv-6071, 2012 U.S. Dist. LEXIS 52565, at \*28-29 (S.D.N.Y. Apr. 13, 2012).

37.    "Although a district court should assess whether 'the alleged facts constitute a valid cause of action,' once a default has been established, the Court accepts as true all the factual allegations in a complaint except as to the amount of damages." *Id.* (quoting *Au Bon Pain v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.").

### A.  Violations of FLSA and NYLL

40.    The FLSA and NYLL generally require employers to pay a prescribed minimum wage as well as a premium overtime rate to employees who work more than forty hours in a work week. *See* 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4; *see also Jacobs v. New York Foundling*

*Hospital*, 577 F.3d 93, 96 (2d Cir. 2009). An employer who fails to pay in accordance with the FLSA is "liable to the employee" for unpaid minimum wages, unpaid overtime compensation, and other damages. 29 U.S.C. § 216(b); *see also Tambriz v. Taste & Sabor LLC*, 577 F. Supp. 3d 314, 322–23 (S.D.N.Y. 2021).

41.     The FLSA additionally has an interstate commerce requirement. The FLSA defines "commerce" to mean "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b). An enterprise is "engaged in commerce or in the production of goods for commerce" if (1) it "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) its "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1)(A)(i)-(ii).

42.     Under the FLSA, an employee bears the burden of proof to establish they were not compensated. However, "[w]here an employer's payroll records are inaccurate or incomplete, courts apply a burden-shifting scheme to determine whether an employee has established that he was underpaid, and what damages he suffered." *Marcelino v. 374 Food, Inc.*, No. 16-cv-6287, 2018 U.S. Dist. LEXIS 51582, at *43 (S.D.N.Y. Mar. 27, 2018). In such instances, "'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). The Second Circuit has noted that this burden "is not high" and may be satisfied through

an employee's "estimates based on his own recollection." *Id.* at 362.

43.     Once an employee satisfies this initial showing, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may only be approximate." *Kuebel*, 643 F.3d at 362.; *see also Hosking v. New World Mortgage, Inc.*, 570 F. App'x 28, 32 (2d Cir. 2014) (Summary Order) (noting "that the employee's burden in proving damages under the FLSA is minimal, particularly when the employer does not keep records") The NYLL applies a similar framework to unpaid compensation claims, providing that "where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (quoting NYLL § 196-a(a)).

44.     Here, the Defendants were engaged in interstate commerce within the meaning of the FLSA in that Defendants: (a) had and have employees engaged in commerce or in the production of goods for commerce, and handles, sells, or otherwise works on goods or materials that have been moved in or produced for commerce by any person; and (b) had and have an annual gross volume of sales of not less than $500,000.00. (Compl. ¶ 14). Further, during Plaintiff's employment with Defendants, Plaintiff routinely engaged in activities which facilitate or relate to interstate or foreign commerce. (Compl. ¶ 15). As such, Defendants were Plaintiff's employer under both the FLSA and the NYLL, and Plaintiff worked for an enterprise having sales in excess of $500,000 and handling goods such as food and other supplies that originated outside of New

York and traveled through interstate commerce daily.

44.     Further, as set forth above, Plaintiff has submitted a detailed statement of her recollection outlining the amount and extent of her work for Defendants and the patently insufficient compensation which she received from Defendants. Indeed, Defendants have acted egregiously in their violations of FLSA and NYLL by consistently failing to pay Plaintiff appropriately for hours worked and at times failing to pay Plaintiff entirely. In fact, Defendants failed to provide appropriate compensation throughout the entirety of Plaintiff's tenure with Defendants.

### III.     PROPOSED FINDINGS REGARDING DAMAGES

46.     Defendants violated the Fair Labor Standards Act ("FLSA") and the New York State Labor Law ("NYLL")  by failing to pay Plaintiff the minimum wages and overtime wages due to her for hours worked in excess of forty (40) hours per workweek and spread-of-hours compensation for hours worked in excess of ten (10) hours per day, in addition to failing to furnish Plaintiff with the requisite wage notices and wage statements.  As such, Plaintiff requests damages for Defendants wage-related violations, as well as pre-judgement interest, and attorneys' fees and costs.

#### A.  MINIMUM WAGE, OVERTIME AND SPREAD OF HOURS

47.     The FLSA and the NYLL each require an employer to pay not less than a statutorily set minimum wage for each hour of work. *See* 29 U.S.C. § 206(a)(1); NYLL § 652(1); 12 N.Y.C.R.R. § 146-1.2.  "Under both the FLSA and NYLL, once the Court determines the 'actual number of hours worked' per week and calculates the 'regular rate' based on those hours, the 'regular rate' is then compared to the statutorily imposed minimum wage to determine whether the

11

employee has been underpaid.*" See Java v. Aguila Bar Restaurant Corp.*, No. 16-cv-6691, 2018 U.S. Dist. LEXIS 69790, at *24-*25 (S.D.N.Y. Apr. 25, 2018).

48.     "An employer shall pay an employee for overtime at a wage rate of 1 ½ times the employee's regular rate for the hours worked in excess of 40 hours in one workweek." 12 N.Y.C.R.R. § 146-1.4; *see also* 29 U.S.C. § 207(a)(1).

49.     Under the NYLL, "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-1.6(a). The "spread of hours" is defined as "the length of the interval between the beginning and end of an employee's workday," including "working time plus time off for meals plus intervals off duty." 12 N.Y.C.R.R. § 146-1.6.

50.     Defendants failed to compensate Plaintiff at least at the minimum wage rate for all hours worked throughout the entire course of her employment with Defendants.  Correspondingly, Defendants failed to compensate Plaintiff for her overtime hours worked at a rate of at least one and one-half (1.5) times the minimum wage rate.  Lastly, Defendants failed to pay Plaintiff an additional hour's pay at the minimum wage rate for each day that her spread of hours exceeded ten (10).  Full calculations demonstrating Defendants' failure as well as the extent of their failure are set forth in **Exhibit C** to the Declaration of Joshua Friedman (Friedman Decl. ¶ 5).  In total, Defendants are liable to Plaintiff for $**89,463.75** in minimum wages, overtime and spread of hours damages.

51.     In addition to allowing recovery for unpaid minimum wages and overtime compensation, the FLSA allows for the recovery of liquidated damages. *See* 29 U.S.C. § 216(b). "Under the statute, a plaintiff is entitled to recover liquidated damages in an amount equal to the amount of unpaid wages and overtime compensation that the plaintiff was improperly denied,

12

unless the employer demonstrates that it acted in good faith and had a reasonable basis for believing that it had not violated the FLSA." *See id.* (providing that plaintiff-employees who prevail under either Section 206 or 207 of the FLSA are entitled to recover "the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and . . . an additional equal amount as liquidated damages"); *see also* 29 U.S.C. § 260 (mandating that an employer pay liquidated damages unless the employer demonstrates that it was acting in "good faith" and "had reasonable grounds for believing" that he was not acting in violation of the FLSA).

52.     The NYLL also authorizes liquidated damages.  An employee is entitled to liquidated damages pursuant to the NYLL "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1-a). Since they have defaulted, Defendants are unable to contend they acted in "good faith" or "with reasonable grounds" for believing their actions were not in contravention of the FLSA or the NYLL.

53.     Accordingly, Plaintiff should be awarded liquidated damages in an amount commensurate with her unpaid minimum wages, unpaid overtime compensation and unpaid spread of hours pay, amounting to approximately $**89,463.75**.

## B.  WAGE NOTICES AND WAGE STATEMENTS

54.     The NYLL requires employers to provide employees, at the time of hiring, with a wage notice containing basic information such as rate of pay. *See* NYLL § 195(1)(a). The penalty for an employer's failure to provide the requisite wage notice within ten business days of the first day of employment is $50 for each workday that a violation occurs or continues to occur, not to exceed a total of $5,000. *See* NYLL § 198(1-b). The NYLL also requires employers to provide employees with a wage statement with each payment of wages. NYLL § 195(3). An employee can

recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed a total of $5,000. NYLL § 198(1-d).

55.     Here, Defendants failed to provide Plaintiffs with the requisite wage notice and the wage statements throughout the entirety of Plaintiff's employment. Accordingly, Plaintiff is entitled to a total of $**10,000** in statutory penalties ($5,000 for statutory penalties for failure to provide the requisite wage notice + $5,000 in statutory penalties for failure to provide the requisite wage statement).

## C.  PRE-JUDGMENT INTEREST

56.     The NYLL allows for prejudgment interest in addition to liquidated damages. *See* NYLL § 198(1-a). As such, Plaintiff is eligible to recover pre-judgment interest on her state law unpaid wage claims at the statutory rate of 9% per annum. *See* NY CPLR §§ 5001, 5004; *Gurung v. Malhotra*, 851 F. Supp.2d 583, 594 (S.D.N.Y. 2012) (applying pre-judgment interest rate to NYLL claims). "The Court has discretion to choose a reasonable date from which prejudgment interest should accrue." *See Junmin Shen v. Number One Fresco Tortillas, Inc*., No. 16-cv-2015, 2018 U.S. Dist. LEXIS 205609, at *39-*40, (S.D.N.Y. Nov. 26, 2018). "Courts often choose the midpoint of the plaintiff's employment within the limitations period." *Id.* at *40 (internal quotations omitted). Here, Plaintiff worked for Defendants from December 20, 2017 to December 27, 2020, the midpoint of which is June 24, 2019.  Between this date and the date of this memorandum, February 13, 2023, precisely 190 weeks have passed.  Taking the statutory interest rate of 9%, converting it to a weekly rate by dividing by fifty-two (52), the number of weeks in a year, multiplying it by Plaintiff's total minimum wage, overtime and spread of hours damages, $89,463.75, and then multiplying it by the 190 weeks between the midpoint of Plaintiff's employment and the present, results in $**29,419.79** in prejudgment interest.

**D.  ATTORNEYS' FEES AND COSTS**

57.      The FLSA and NYLL both provide for an award of reasonable attorneys' fees and costs to a prevailing Plaintiff in a wage-and-hour action. 29 U.S.C. § 216(b); NYLL § 198-1(a); *See Callari v. Blackman Plumbing Supply, Inc*., No. 11-cv-3655, 2020 U.S. Dist. LEXIS 79882, at \*20 (E.D.N.Y. May 4, 2020) ("Both the FLSA and NYLL are fee-shifting statutes which entitle a plaintiff to an award of reasonable attorney's fees and costs in wage-and-hour actions.").

### i.        Reasonable Hourly Rate

58.      In deciding whether fees and costs are reasonable, courts consider "what a reasonable client would be willing to pay." *Trs. of Local 813 Ins. Trust Fund v. Bradley Funeral Serv., Inc.*, No. 11-cv-2885, 2012 U.S. Dist. LEXIS 126907, at \*12-\*13 (E.D.N.Y. Aug. 10, 2012) (internal quotations omitted). According to the forum rule, courts should assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits. *See Simmons v. N.Y.C. Transit Auth.,* 575 F.3d 170, 174–76 (2d Cir. 2009). The reasonable hourly rate determined by the court is multiplied by the number of hours reasonably expended, resulting in a "presumptively reasonable fee" or lodestar amount. *Id*. at 174. As such, in accordance with the presumptive maximum rates established by Hon. Judge Brown, Plaintiff seeks the following hourly rates for the attorneys that worked on this action: $375 for Marjorie Mesidor a Partner at Phillips & Associates, $295 for Joshua Friedman, an Associate at Phillips & Associates, $100 for Dane Pierre and Ingrid Fernandez, Law Clerks at Phillips & Associates, and $100 for Justyna Callanan and Humberto Alvarez, Paralegals at Phillips & Associates.[1]

---

[1] The qualifications of each attorney and paralegal are more fully detailed in the accompanying Declaration of Joshua Friedman.

59.     Ms. Mesidor is an experienced litigator with seventeen (17) years of experience as an attorney and thirteen (13) years litigating in the area of civil rights law. (Friedman Decl. ¶ 10). Given this extensive experience, Plaintiff maintains that an hourly rate of $375 is reasonable and warranted. "Recent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300–$450 for partners, $200–$325 for senior associates, and $100–$200 for junior associates." *Pall Corp. v. 3M Purification Inc.,* No. 97-cv-7599, 2012 U.S. Dist. LEXIS 76755, at *11 (E.D.N.Y. June 1, 2012) (internal quotations omitted). Moreover, Ms. Mesidor's requested hourly rate of $375 was recently deemed reasonable in the *Eastern District of New York. See Sooroojballie v. Port Auth. of N.Y. & N.J.,* No. 15-cv-1230, 2020 U.S. Dist. LEXIS 174941, at *28 (E.D.N.Y. Sept. 22, 2020).

60.     Mr. Friedman, who served as lead counsel in this matter, graduated from law school in 2012 and was admitted to practice in New York that same year. (Friedman Decl. ¶ 12). Mr. Friedman has nearly ten (10) years of experience as an attorney, with over seven (7) of those years in the field of civil rights work. (Friedman Decl. ¶ 12). Accordingly, Plaintiff submits that a rate of $295 per hour for Mr. Friedman is eminently reasonable. *See McLaughlin v. IDT Energy,* No. 14-cv-4107, 2018 U.S. Dist. LEXIS 128347, at *52-*53 (E.D.N.Y. July 30, 2018) (finding rates typical to the Eastern District to be: "$550 for partners/equity owners with more than thirty years of experience, $500 for partners/equity owners with more than fifteen years of experience, $450 for partners/equity owners with more than ten years of experience, $400 for senior associates/associates with more than ten years of experience, $350 for senior associates/associates with six to nine years of experience, $300 for associates with three to five years of experience, $250 for associates with fewer than three years of experience").

61.     Mr. Pierre graduated from law school in 2021 and was recently admitted to the New

16

York State Bar in February 2023 after passing the February 2022 bar exam. Mr. Pierre has nearly three (3) years of experience as a law clerk and has worked in the area of employment law for almost one (1) year. (Friedman Decl. ¶ 14). Ms. Fernandez has a Bachelor's degree in Paralegal Studies and has worked as a paralegal for more than seven years. (Friedman Decl. ¶ 15). Ms. Fernandez also recently obtained her Juris Doctorate and is currently awaiting admission to the New York State Bar after passing the July 2022 bar exam. Thus, Plaintiff respectfully requests a rate of $100 per hour for both Ms. Fernandez and Mr. Pierre. *See LG Cap. Funding, LLC v. 5Barz Int'l, Inc.,* No. 16-cv-2752, 2019 U.S. Dist. LEXIS 117399, at *4 (E.D.N.Y. July 15, 2019) ("In this District, law clerks are typically awarded fees at the same hourly rate as legal paraprofessionals, or paralegals.").

62.    Plaintiff additionally seeks hourly rates of $100 for the paralegals that performed work on this case: Ms. Justyna Callanan and Mr. Humberto Alvarez. Paralegals in this District are generally awarded an hourly rate of $90 to $100. *See Douyon v. NY Medical Health Care, P.C.,* 49 F. Supp. 3d 328, 343 (E.D.N.Y. 2014) ("As to paralegals, courts in the Eastern District of New York have held that $90-$100 per hour is a reasonable fee."). Ms. Callanan has significant experience and education. Ms. Callanan has a Bachelor's degree in Business Administration – Legal Studies and Business and has worked as a paralegal for ten years. (Friedman Decl. ¶ 16). Mr. Alvarez graduated from St. John's University with a Bachelor of Science degree in computer science with a mathematics minor and has been working as a paralegal for six years. (Friedman Decl. ¶ 17). Accordingly, Plaintiff submits that an hourly rate of $100 for the work of experienced paralegals is justified. *See Sciascia v. Prime Protective Servs.*, No. 13-cv-0800, 2014 U.S. Dist. LEXIS 32048, at *27  (E.D.N.Y. Feb. 19, 2014), (utilizing a rate of $100 per hour for paralegals).

### ii.      Number of Hours Reasonably Expended

Parties seeking attorneys' fees bear the burden of demonstrating the reasonableness of both the hours expended and the type of work performed. They typically do this through contemporaneous time records, preferably those specifying the nature of the work performed, the hours spent, and the dates on which the work was done. *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir. 1983). The level of detail need not be overly exhaustive, however. *See Aiello v. Town of Brookhaven*, No. 94-cv-2622, 2005 U.S. Dist. LEXIS 11462, at *9 (E.D.N.Y. June 13, 2005). "District courts have broad discretion to determine the reasonableness of hours claimed based on their general experience and familiarity with the case." *Brady v. Wal-Mart Stores, Inc*., No. 03-cv-3843, 2010 U.S. Dist. LEXIS 115380, at *22, (E.D.N.Y. Oct. 29, 2010) (internal quotations omitted). In determining whether an award is reasonable, the District Court must review and eliminate hours that are found to be "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckhart*, 461 U.S. 424, 434 (1983).

Here, Plaintiff seeks **19.8 hours**, which are supported by contemporaneous time records showing the date and time the work was performed and a description of the work done. (Friedman Decl. ¶ 8; Ex. D). Moreover, Plaintiff has removed any time that could even arguably be considered unnecessary and duplicative. (Friedman Decl. ¶ 7). This number of hours is in line with other decisions approving a similar number of hours. *See Villarrubia v. La Hoguera Paisa Restaurant & Bakery Corp.*, No. 18-cv-4929, 2020 U.S. Dist. LEXIS 188671, at *5-*6 (E.D.N.Y. Oct. 9, 2020) (finding 33.68 hours reasonable). The following chart sets forth the number of hours expended by each attorney and paralegal who worked on this case:

| | |
|---|---|
| Marjorie Mesidor, Esq. | .2 |
| Joshua Friedman, Esq. | 2.2 |
| Dane Pierre | 10.0 |
| Ingrid Fernandez | .8 |
| Justyna Callanan | 6.4 |
| Humberto Alvarez | .2 |
| **Total** | **19.8** |

(Friedman Decl. ¶ 8). Taking into account the rates requested for each entrant set forth above,

Plaintiff seeks the following amount of attorneys' fees:

| | |
|---|---|
| Marjorie Mesidor, Esq. | $75.00 ($375/hr. x 0.2 hours) |
| Joshua Friedman, Esq. | $649.00 ($295/hr. x 2.2 hours) |
| Dane Pierre | $1,000.00 ($100/hr. x 10 hours) |
| Ingrid Fernandez | $80.00 ($100/hr. x .8 hours) |
| Justyna Callanan | $640.00 ($100/hr. x 6.4 hours) |
| Humberto Alvarez | $20.00 ($100/hr. x .2 hours) |
| **Total** | **$2,464.00** |

(Friedman Decl. ¶ 19).

### iii.    Costs

"Attorney's fees awards include those reasonable out-of-pocket expenses incurred by

attorneys and ordinarily charged to their clients." *United States Football League v. National*

*Football League*, 887 F.2d 408, 416 (2d Cir. 1989). Here, Plaintiff seeks $**808.50** in costs, which

19

represent a court filing fee, postage and delivery, and transcript costs. (Friedman Decl. ¶ 20; Ex.

E). Therefore, in total, Plaintiff requests an award of **$3,272.50** in attorneys' fees and costs.

## IV.    CONCLUSION

63.    For the foregoing reasons, Plaintiff respectfully requests that the Court award

Plaintiff (1) **$178,927.50** for Defendants' minimum wage, overtime and spread of hours violations

pursuant to the FLSA and the NYLL, plus liquidated damages (2) $**10,000** in statutory penalties

($5,000 for statutory penalties for failure to provide the requisite wage notice + $5,000 in statutory

penalties for failure to provide the requisite wage statement); (3) pre-judgment interest in the

amount of $**29,419.79**; (4) attorneys' fees in the amount of **$2,464.00**; and (5) costs in the amount

of **$808.50**, totaling $**221,619.79**.


Dated: February 13, 2023
       Garden City, New York


                                        **Phillips & Associates, PLLC**
                                        *Attorneys for Plaintiff*

                                        By: /s/ Joshua Friedman
                                            Joshua Friedman, Esq.
                                            585 Stewart Avenue, Suite 410
                                            Garden City, New York 11530
                                            (516) 365-3731
                                            jfriedman@tpglaws.com